UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.E.H, <br> Plaintiff, <br> v. <br> ANDREW M. SAUL, Commissioner of Social Security, <br> Defendant. | Case No. 5:18-cv-00433-SHK <br><br> OPINION AND ORDER |

Plaintiff D.E.H.[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner," "Agency," or "Defendant") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act (the "Act"). This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

---

[1] The Court substitutes Plaintiff's initials for her name to protect Plaintiff's privacy with respect to the medical records discussed in this Opinion and Order.

# I. BACKGROUND

Plaintiff filed an application for DIB on April 22, 2014 and for SSI on April 25, 2014, alleging disability beginning on December 4, 2013. Transcript ("Tr.") 183-84 (DIB application summary); 185-90 (SSI application summary).[2] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on October 20, 2016, ALJ Michael B. Richardson determined that Plaintiff was not disabled. Tr. 16-32. Plaintiff sought review of the ALJ's decision with the Appeals Council; however, review was denied on February 1, 2018. Tr. 1-7. This appeal followed.

# II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the

---

[2] A certified copy of the Administrative Record was filed on July 30, 2018. Electronic Case Filing Number ("ECF No.") 16. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

2

Court] may not engage in second-guessing.") (citation omitted). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

### III. DISCUSSION

#### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(a), 416.920(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps."

3

Tackett, 180 F.3d at 1098; 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

> Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB or SSI]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).[3]
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB or SSI]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB or SSI]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).
>
> Step 4. Is the claimant able to do any work that he or she has done in the past?[4] If so, then the claimant is "not disabled" and is not

---

[3] The Court has also considered the parallel regulations set forth in 20 C.F.R. § 416.920 et seq., when analyzing the ALJ's denial of Plaintiff's SSI application.

[4] Before reaching the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), or the ability of the claimant to meet the physical, mental, sensory, and other requirements of work despite their limitations. 20 C.F.R. §§ 416.920(e), 416.945(a)(4). To

entitled to [DIB or SSI]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [DIB or SSI]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB or SSI]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB or SSI]. See id.

Id. at 1098-99.

### B. Summary Of ALJ And Agency's Findings

The ALJ determined that "[Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2017." Tr. 21. The ALJ then found at step one, that "[Plaintiff] has not engaged in [SGA] since December 4, 2013, the alleged onset date (20 C.F.R. 404.1571 *et seq*. and 416.971 *et seq*.)." Id. (italics in original). At step two, the ALJ found that "[Plaintiff] has the following severe impairment:

determine the RFC, the ALJ evaluates the claimant's symptoms and the extent to which these symptoms are consistent with evidence in the record. Id. § 416.929(a). At the fourth step, the ALJ must consider the claimant's RFC when determining whether the claimant can perform previous work.

5

degenerative disc disease of the lumbar spine with L5-S1 spondylitic spondylolisthesis with bilateral radiculopathy (20 CFR 404.1520(c) and 416.920(c))." Tr. 22. At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Id.

> In preparation for step four, the ALJ found that Plaintiff has the RFC to: perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) and SSR 83-10 specifically as follows: [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for six hours out of an eight-hour workday with regular breaks; she can sit for six hours out of an eight-hour workday with regular breaks; she is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying; she is precluded from climbing ladders ropes, and scaffolds; she can frequently perform all other postural activities; she is precluded from concentrated exposure to extreme cold, fumes, dust, odors, other pulmonary irritants, hazards, and uneven terrain; she requires the ability to alternate between sitting and standing at will without going off task; and she requires the ability to use an assistive device for ambulating for longer than 20 minutes.

Tr. 24-25. The ALJ then found, at step four, that "[Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965)." Tr. 29.

In preparation for step five, the ALJ noted that "[Plaintiff] was born on April 2, 1986 and was 27 years old, which is defined as a younger individual age 18-49, on alleged disability onset date (20 CFR 404.1563 and 416.963)." Tr. 30. The ALJ observed that "[Plaintiff] has at least a high school education and is able to

6

communicate in English (20 CFR 404.1564 and 416.964)." Id. The ALJ then added that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills (See SSR [Social Security Ruling] 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). Id.

At step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a))." Id. Specifically, the ALJ found that Plaintiff could perform the "unskilled light" occupations of "Cashier II," as defined in the Dictionary of Occupational Titles ("DOT") code 211.462-010, "Small products assembler II, DOT 739.687-030," and "Assembler, plastic hospital products, DOT 712.687-010." Tr. 30-31. The ALJ based his decision that Plaintiff could perform the aforementioned occupations "on the testimony of the [VE]" provided during the administrative hearing, after "determin[ing] that the [VE's] testimony [wa]s consistent with the information contained in the [DOT]." Tr. 31.

After finding Plaintiff "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ concluded that "[a] finding of not disabled is . . . appropriate under the framework of the above-cited rules." Id. (internal quotation marks omitted). The ALJ, therefore, found that "[Plaintiff] has not been under a disability, as defined in the . . . Act, from December 4, 2013, through [October 20, 2016], the date of th[e] decision (20 CFR 404.1520(g) and 416.920(g))." Id.

**C.   Summary Of Plaintiff's Arguments**

In this appeal, Plaintiff raises 2 issues, including whether the ALJ erred by: (1) failing to properly consider Plaintiff's testimony; and (2) failing to propound a

7

proper hypothetical question to the vocational expert at the administrative hearing. ECF No. 16, Joint Stipulation ("J. Stip.") at 5, 20.

### D. **Findings And Arguments Regarding Plaintiff's Testimony**

#### 1. ALJ's Consideration Of Plaintiff's Testimony.

The ALJ "considered all of [Plaintiff's] subjective complaints, including statements from the administrative hearing and written submissions." Tr. 25. The ALJ summarized the following testimony provided by Plaintiff at the hearing:

> [Plaintiff] alleged that back pain that radiated into her legs limited her ability to work. Her back pain worsened after a car accident in October 2015. [Plaintiff] testified that her symptoms worsened in the past three to four months. She stated that in the last three to four months, her legs began to go numb. She stated that prior to the last three to four months, she was able to sit for one to two hours at a time; she could stand for 45 minutes to an hour at a time; and she could walk approximately one mile. She stated that in the last three to four months, she was only able to sit for 30 to 60 minutes at a time; she can only stand for 20 minutes; and she can only walk a few steps before her legs go numb. She testified that over the past several years, she used a cane for ambulating longer than approximately 20 minutes. She maintained she used the cane for balance and ambulating because her legs would give out on her. She stated that she used the cane approximately two to three times per week.

Id. The ALJ did not comment further on the credibility of these particular statements by Plaintiff, but instead cited to three issues in Plaintiff's testimony that supported his RFC determination:

> [Plaintiff] admitted during the hearing that she could have perform[ed] light exertional work prior to her car accident in 2015. She acknowledged that during that time she stopped taking Norco, which

could account for some of her worsening pain. She stated she was supposed to have surgery the day after the hearing, although no medical records to support this claim were submitted post-hearing.

Tr. 25. The ALJ elaborated as follows:

> The claimant admitted during the hearing that up until a few months prior to the hearing, she could have performed a light exertional job. She described that she had an exacerbation of her back pain approximately three to four months prior to the hearing. The claimant admitted that she had stopped taking her oral pain medications during the time her back pain worsened, which may account for part of the exacerbation in her symptoms. The claimant testified she was supposed to have lumbar spine surgery the day after the hearing, which would have presumably improved her back pain after she recovered from surgery. The file does not contain any evidence the claimant attended her surgery, but the undersigned presumes the claimant's symptoms would improve shortly after back surgery. Based upon the totality of the evidence, including her admission that she could have performed light exertional work up until a few months prior to the hearing, there does not appear to be 12-month period for which she was unable to work.

Tr. 26.

The ALJ also summarized statements made by Plaintiff in her written submissions, specifically concerning asthma. The ALJ found that "[Plaintiff's] allegations concerning the intensity, persistence and limiting effects of her symptoms are not completely consistent with the totality of the evidence." Tr. 26. As to her asthma, the ALJ noted that "[t]he longitudinal evidence does not support [Plaintiff's] subjective statements regarding the frequency and severity of her asthma" because despite her claims that "she had asthma attacks one to two times per month[,]" Plaintiff "admitted that she had not been hospitalized or received

treatment at the emergency room due to her impairments" and "had not seen her physician regarding her asthma since sometime in 2012." Id. The ALJ found these facts inconsistent with Plaintiff's subjective statements about having attacks twice a month and with the presence of severe asthma.

### 2. Plaintiff's Argument

As a preliminary matter, Plaintiff notes that the ALJ incorrectly found that she does not meet the required 12-month duration of disability. Plaintiff contends that she "concede[d] she could have worked prior to October 2015[,]" which still left her unable to work for the 12-month period between October 2015 and the date of the ALJ's decision in October 2016." ECF No. 26, J. Stip. at 7. Therefore, Plaintiff contends, the ALJ improperly asserted that Plaintiff did not meet the durational requirement for disability and relied on this erroneous conclusion to discredit her testimony. Id.

Plaintiff then enumerates several reasons why, independent of the errors regarding the disability period, the ALJ failed to provide clear and convincing reasons for discounting her testimony: the ALJ failed to cite to specific testimony that he found not credible when rejecting Plaintiff's subjective symptom testimony (id. at 6); there was no evidence of malingering and objective evidence in the record supported her statements about her pain (id. at 7-8); the ALJ incorrectly characterized her treatment as "conservative" (id. at 8); the ALJ cherrypicked information from a 2016 exam to dismiss Plaintiff's pain testimony (id. at 8-9); her concession about her ability to perform light work before October 2015 is not sufficient to dismiss her pain testimony from after October 2015 (id. at 9); the ALJ's citation to Plaintiff's pain management methods ignored evidence that they were either ineffective or curbed by her doctors (id. at 9-10); there was evidence that a doctor recommended surgery in May 2016 but the ALJ failed to develop the record as to why the surgery had not occurred (id. at 10); and the ALJ incorrectly discredited Plaintiff's reasons for not returning to work on evidence about her

asthma and depression treatment, when Plaintiff's actual reasons were related to her back and leg pain (id. at 10-11).

### 3. Defendant's Response

Defendant argues that the ALJ properly considered the inconsistencies between Plaintiff's pain testimony and the objective evidence as a primary reason for discounting her statements. Id. at 13-14. Second, Defendant contends that the ALJ's assessment of Plaintiff's treatment as "conservative on the whole" was supported by precedent, that evidence substantiated that treatment was effective, and that Plaintiff's reasons for not taking Norco or seeking other pain management were insufficient. Id. at 15-16. Third, Defendant argues that the inconsistencies in Plaintiff's testimony, regardless of the subject, cast doubt on the credibility of her remaining testimony. Id. at 17. Lastly, Defendant notes that "no physician issued an opinion with more restrictive functional limitations than those contained in his [RFC] finding (AR 29)." Id. at 17-18.

### E. Standard To Review ALJ's Consideration Of Plaintiff's Testimony

When a claimant has medically documented impairments that "might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying '<u>which</u> testimony [the ALJ] found not credible" and explaining '<u>which</u> evidence contradicted that testimony.'" Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017) (emphasis in original) (quoting Brown-Hunter v. Colvin, 806 F.3d 487, 489, 494 (9th Cir. 2015)). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

11

"The ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). Also, while an ALJ cannot reject the severity of subjective complaints solely on the lack of objective evidence, the ALJ may nonetheless look to the medical record for inconsistencies. See Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599-600 (9th Cir. 1999) (finding that "[t]he ALJ provided clear and convincing reasons for rejecting [Plaintiff's] testimony" by "point[ing] to specific evidence in the record—including reports by [Plaintiff's doctors]—in identifying what testimony was not credible and what evidence undermined [Plaintiff's] complaints.").

### F. ALJ's Decision Is Not Supported By Substantial Evidence

#### 1. Plaintiff's Period Of Disability

A threshold issue in this case is Plaintiff's period of disability. As stated in Section III, claimants are considered disabled only where they cannot engage in any SGA due to their physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(2)(A) (defining disability for purposes of DIB), 1328c(a)(3)(A) (defining disability for purposes of SSI).

An impairment "which has lasted" 12 months means that a claimant is not disabled if "within 12 months after the onset of an impairment . . . the impairment no longer prevents [SGA]." 65 Fed.Reg. 42774 (2000); see also Barnhart v. Walton, 535 U.S. 212, 222 (2002). Further, because the statute covers impairments which "can be expected to last" 12 months, an ALJ may be required to determine whether a claimant's disabling condition could persist in the future. See Walton, 535 U.S. at 224 ("[T]he phrase 'can be expected' foresees a decisionmaker who is looking into the future . . . ."); see also McKowen v. Astrue, No. CV 11-4939 AJW, 2012 WL 1463374, at *3 (C.D. Cal. Apr. 27, 2012)

(remanding where the ALJ "did not develop the record with respect to the expected duration" of the plaintiff's conditions).

Here, Plaintiff's alleged disability onset date was December 4, 2013 and the ALJ found her date last insured to be December 31, 2017. However, Plaintiff has conceded that she could have worked prior to October 2015, at which time she was in a car accident that exacerbated her back pain. ECF No. 26, J. Stip. at 7 ("[Plaintiff] concedes she could have worked prior to October 2015.")[5]; Tr. 55 (Plaintiff's testimony that she "was in an accident in October" that worsened her

---

[5] Plaintiff's concession is based on testimony she provided during the hearing on August 15, 2016, during which she made the following statements regarding her ability to work before October 2015 in response to questions from the ALJ:

Q  So, I understand things have gotten, according to your testimony, are significantly worse here.

A  Yes, correct.

Q  So, let's split this up in to[sic] two different timeframes, okay? Prior to your car accident in October of last year, what would have prevented you from doing work back then? So let's say a year ago, summer of 2015, okay, where you've described the pain wasn't nearly what it is today. Why couldn't you have worked back then?

A  Well I was working -- well I could have worked. However, the pain was there, sometimes I could bear it. It was a bearing pain, so much where, I mean, I can't stand for so long or I can't move around for so long but it was something I could bear, I could handle.

Q  Okay. So, my question to you then is why do you have an alleged onset date in 2013 then?

A  That's when It was, it was bad but it was, like I said, it was bearable so if I would go to work it would be –

Q  That's my question, if you're saying that it was bearable –

A  Yeah, if I would go to work –

Q  --it sounds like you think you could work.

A  Yeah, if I would go to work, I think it would be bad. It would trigger more pain.

Tr. 58-59.

13

| | |
|---|---|
| 1 | condition); Tr. 365 (examination notes from April 5, 2016 stating that "[patient] |
| 2 | was in MVA [Motor Vehicle Accident] in 10/2015."). |
| 3 |     Because Plaintiff must have been unable to work due to her alleged condition |
| 4 | in order to satisfy the standard of disability set forth in the regulations, Plaintiff's |
| 5 | admission that she could work before October 2015 invalidates her claims for DIB |
| 6 | and SSI from her alleged onset of date of December 4, 2013 until October 2015. |
| 7 | The Court will therefore only address Plaintiff's claims of disability from October |
| 8 | 2015 onward. |

### 2. ALJ's Presumptions About Surgery Are Not Clear And Convincing Reasons To Discount Plaintiff's Testimony.

Plaintiff's medical record contains evidence of a condition that has prevented her from engaging in SGA since her car accident in October 2015, consistent with her testimony. During the hearing, Plaintiff testified that her pain worsened after her car accident in October 2015 and that she now finds it difficult to get out of bed; she can sit for at most an hour and stand for a maximum of 20 minutes; her legs go numb "three or four times a week" because of her back pain; she uses a cane regularly because her legs will suddenly "go out"; she can lift minimal weight and has trouble bending and twisting; she cannot walk upstairs at all; she needs to lie down repeatedly throughout the day; and that her mom now helps her with the housework. Tr. 49-50, 55-57.

Her May 6, 2016 medical notes corroborate this testimony, indicating that her condition worsened to a point where activities of daily living became exceedingly difficult, which prompted her doctors to discuss surgery. During this examination, attending physician Dennis Cramer noted that a "review of systems" that were "significant for headaches, back pain and leg pain," daily use of a cane to walk, and "difficulty bathing, dressing and undressing herself, and even walking down the hall to use the bathroom." Tr. 337. The notes further state:

14

> She has severe tenderness of the lumbosacral region. Extension
> increases her pain. There is guarding with motion. Her lower back
> range of motion is severely restricted to approximately 20% of normal.
> Flexion results in radiating pain to the legs. . . . Her reflexes are
> diminished for her left patellar and Achilles. . . . Sensation is decreased
> in the bilateral posterior aspect of her legs.

Tr. 338. The doctor also noted during this examination that he discussed surgery because of the "failure of conservative treatment and progressive pain that is impairing her day-to-day function[.]" Tr. 339.

Although the ALJ summarizes this objective medical evidence without explicitly rejecting it, it appears the ALJ disregarded this evidence when evaluating Plaintiff's pain testimony because Plaintiff failed to submit evidence about whether the surgery did or did not occur before the date of decision. See Tr. 28 (citing aforementioned evidence about Plaintiff's worsening back pain, daily use of a cane, severe tenderness in her lumbosacral region, decreased range of motion, and recommended surgery, but also noting that "[t]he record does not contain any evidence that [Plaintiff] underwent the surgery prior to the date of decision."). Despite the absence of this evidence, the ALJ "presume[d] [Plaintiff's] symptoms would improve shortly after back surgery" and that, consequently, there was "no 12-month period for which [Plaintiff] was unable to work." Tr. 26. However, the ALJ's presumption is not a specific, clear, or convincing basis to reject Plaintiff's pain testimony for three reasons.

First, in Plaintiff's May 6, 2016 examination, Dr. Cramer made the following assessment:

> Given her failure of conservative treatment and ***progressive pain that is
> impairing her day-to-day functions*** I discussed surgery. I discussed the
> different surgical options. At this point a request will be made for an
> L5-S1 posterior decompression and fusion. I explicitly explained to her

15

> the phenomena of adjacent segment disease and that ***it is likely that she will need adjacent level surgery in the future***, especially given the fact that at the L4-L5 level there is mild degeneration already[.]

Tr. 339 (emphasis added).

While the ALJ's decision acknowledges that Dr. Cramer recommended Plaintiff for surgery, the decision does not address the doctor's indication that "adjacent segment disease" was likely to necessitate future surgery. This evidence supports that Plaintiff's worsening condition after October 2015 may have been expected, at the time of the ALJ's decision on October 17, 2016, to last no less than 12 continuous months even if she had surgery in the day after the hearing in August 2016. See 42 U.S.C. §§ 423(d)(2)(A), 1328c(a)(3)(A) (an individual is disabled if they have a condition preventing them from engaging in SGA "which has lasted or ***can be expected to last*** for a continuous period of not less than 12 months.") (emphasis added); Walton, 535 U.S. at 224 ("[T]he phrase 'can be expected' foresees a decisionmaker who is looking into the future . . . ."). Plaintiff's date last insured was found to be December 31, 2017; therefore, it is possible that Plaintiff could have proved her condition "became disabling prior to her last insured date" between the date of her accident in October 2015 and December 31, 2017—a period that is sufficient to satisfy the 12-month duration requirement. See Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (claimants must demonstrate that their condition, if not permanently disabling, "became disabling prior to his last insured date.").

Second, although Plaintiff's counsel stated that Plaintiff was scheduled to undergo back surgery the day after the hearing and agreed to supplement the record with information about that surgery after it occurred, the ALJ did not appear to consider evidence of the back surgery particularly probative. Specifically, the ALJ and Plaintiff's counsel had the following exchange:

| | | |
|---|---|---|
| 1 | ATTY: | Well, we have everything up to date, Your Honor, but |
| 2 | | [Plaintiff] is actually going to have back surgery tomorrow. |
| 3 | | So, obviously we don't have those records. |
| 4 | ALJ: | Do you want to hold it open to see how the back surgery goes |
| 5 | | or does it, I mean, ***absent there being some sort of an*** |
| 6 | | ***emergency it's not going to tell us a lot other than there was a*** |
| 7 | | ***back surgery.*** |
| 8 | ATTY: | Right. I mean, and obviously it is pertinent because this is a |
| 9 | | back case. |
| 10 | ALJ: | Right. |
| 11 | ATTY: | But I just don't know if that's going to – |
| 12 | ALJ: | Well, let's, at the very least is would be good to document |
| 13 | | that the surgery actually occurred, okay? |
| 14 | ATTY: | Yes. |
| 15 | ALJ: | So, ***I'll give you seven days afterwards to submit just the*** |
| 16 | | ***paperwork that says that the surgery occurred and any*** |
| 17 | | ***notations therein.*** Does that work? Ten days? |
| 18 | ATTY: | Ten would probably be a little safer. |
| 19 | ALJ: | All right. So, post ten days. Well, if I forget to say so at the |
| 20 | | end of this, good luck with that. |

Tr. 40-41 (emphasis added).

Although the ALJ did not consider documentation of the surgery to be vital to the resolution of the case ("it's not going to tell us a lot other than there was a back surgery"), it appears that he later relied on the absence of any documentation to disregard the substantial and more recent evidence of Plaintiff's debilitating back pain. See Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995), as amended (Apr. 9, 1996) (holding a later opinion "based on a more complete evaluation" of plaintiff's impairments should be accorded greater weight). As the ALJ stated, any evidence

17

submitted 10 days after the surgery would inform the ALJ of nothing more than the fact that the surgery occurred; information provided 10 days after surgery could not reasonably be expected to indicate the success of the surgery in enabling Plaintiff to perform SGA. Moreover, the ALJ did not consider the evidence of likely future surgery, as discussed above, which undermines the presumption that Plaintiff's condition would improve after her decompression and fusion. Therefore, the ALJ's rejection of Plaintiff's testimony about her pain is not clear and convincing because it is not based on evidence that undermines her credibility.

Third, the ALJ does not consider evidence that Plaintiff's surgery had been conditioned on insurance coverage. Tr. 362 ("pt says that she went to ortho and will be getting surgery on back if IEHP approves it."; "pt . . . will get surgery on back but pending approval from IEHP for the surgery."). Although counsel represented to the ALJ that Plaintiff was scheduled to undergo back surgery the next day, it is unclear whether she had the surgery, and, not, whether Plaintiff's ability to obtain insurance coverage affected this decision. Because the record does not resolve this issue, the ALJ's decision is subject to remand. See Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) (quoting Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995)) (noting that "'[d]isability benefits may not be denied because of the claimant's failure to obtain treatment [s]he cannot obtain for lack of funds'").

In sum, contrary to the ALJ's finding, there is a 12-month period from October 2015 and December 31, 2017 during which Plaintiff could have been unable to work. The Court finds that the ALJ's decision to discount Plaintiff's pain testimony based on the ALJ's presumptions about surgery and improvement are not clear and convincing. The record does not support the conclusion that Plaintiff's condition improved for the remainder of her disability period such that she was not disabled for a continuous 12-month period before her date last insured.

/ / /

/ / /

18

### 3. ALJ's Discrediting Of Plaintiff's Testimony Because She No Longer Took Narcotics Is Not Clear And Convincing.

In finding Plaintiff not disabled, the ALJ also notes that Plaintiff "had stopped taking her oral pain medications during the time her back pain worsened, which may account for part of the exacerbation in her symptoms." Tr. 26. This is not an accurate characterization of her testimony.[6] Plaintiff did not voluntarily stop taking Norco; rather, after taking it for at least two years, Plaintiff testified that her doctors took her off Norco "because [she] was on it too long and they wanted [her] body to rest[.]" Tr. 54-55, 63-64. Plaintiff's pain regimen was thereafter replaced with a steroid epidural at the spine clinic, and as of the last medical record provided, she had an appointment at the pain management clinic in June 2016. Tr. 337, 365. Therefore, because Plaintiff stopped taking narcotics at her doctors' instruction after two years of use and continued to seek other forms of pain management, the ALJ's reason for discounting Plaintiff's pain testimony on this basis is legally insufficient. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("[A]n unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of the claimant's pain testimony" unless one of a "number of good reasons for not doing so applies.").

### IV. CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). See Garrison, 759 F.3d at 1009 (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the

---

[6] The ALJ did not find that Plaintiff's proffered reason for no longer taking Norco was unsupported by the evidence or otherwise lacking in credibility.

Commissioner . . . , with or without remanding the cause for a rehearing.") (citation and internal quotation marks omitted).

**IT IS SO ORDERED.**

DATED: July 12, 2019

_____
HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge